# Richmond.

JACKSON, TRUSTEE, v. VALLEY TIE AND LUMBER CO.

November 19, 1908.

1. EQUITY PRACTICE—*Reciting Court's Opinion in Decree.*—A court of equity may, with propriety, deliver a written opinion giving its reasons for a decision, and have same made a part of the decree carrying out the decision, or the grounds for the court's ruling may be recited in the decree.

2. BANKRUPTCY—*Lien Within Four Months of Adjudication—Invalidation—Insolvency at Date of Lien—Burden of Proof.*—In order to invalidate a lien on the property of a person who within four months thereafter is adjudged a bankrupt, it is essential that it appear that such person was insolvent at the time the lien was obtained, and the burden of proving such insolvency is upon the party alleging it. If it does not so appear, the lien is valid.

3. BANKRUPTCY—*Attachment Lien—Enforcement—Intervening Bankruptcy of Debtor—"Inchoate Lien" by Levy of Attachment.*—Under the express terms of our statute (Code, 1904, sec. 2971) an attachment is a lien on personal property from the time of levying the attachment, or serving a copy thereof as provided by section 2967 of the Code, although it may be necessary subsequently to enter a judgment or decree for its enforcement. The lien of the attachment is perfected by the levy thereof, and the subsequent judgment or decree is simply the enforcement of a valid pre-existing lien. It is the creation of the lien and not its enforcement which is denounced by the bankrupt act, and if the lien is valid it may be enforced although bankruptcy intervenes between the creation of the lien and the decree for its enforcement. The lien created by the levy is not "incohate" or "imperfect."

4. AMENDMENT OF PLEADINGS—*Facts Existing at Time of Original Hearing—Refusal to Present.*—While great liberality is allowed in amending pleadings, both at law and in equity, when a party has had every opportunity afforded him to present his case for consideration and determination by the court, he will not be allowed, after he has ascertained what the decision of the court will be, to come forward

and, by means of amendment of his pleadings, obtain another hearing of matters which he might have brought forward when the case was first submitted, but declined to present. An "amended and supplemental petition," which alleges no new matter, no after-discovered evidence, no misconduct or surprise, tenders no new proof and gives no excuse for failure to present it before, is properly refused.

Appeal from a decree of the Corporation Court of the city of Staunton. Appellant filed a petition claiming the fund in litigation by reason of the fact that the principal debtor had been adjudged a bankrupt within four months after the levy of complainant's attachment and that he was the trustee of the bankrupt's estate. From a decree dismissing the petition, the petitioner appealed. ·

*Affirmed.*

The opinion states the case.

*Landes & East* and *Braxton, Ker & McCoy,* for the appellant.

*J. M. Perry,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

On the 13th of September, 1906, E. K. Nercereau sued out of the Corporation Court of the city of Staunton a chancery attachment against H. N. Girard, the ground of the attachment being that Girard was a non-resident; and on that day the process in the suit was served on the Valley Tie and Lumber Company, a partnership, as garnishee defendant.

On November 5, 1906, in the city of Washington, D. C., the defendant Girard was adjudicated bankrupt on his own petition. February 19, 1907, E. H. Jackson, filed his petition in this attachment suit, setting forth the adjudication of Girard a bankrupt, the appointment of petitioner as his trustee; that the plaintiff in this suit had attached a fund of about $567.37 owing to the estate of Girard by the defendant, the Valley Tie and Lumber Company; and that "inasmuch as the said Girard

is now a bankrupt and as your petitioner has been appointed by the creditors of said bankrupt as trustee to take charge of all the assets of said estate, he has a right to require the said Valley Tie and Lumber Company to pay over to him the said sum of $567.37," etc.; and praying to be made a party defendant in the chancery suit. On the same day the petitioner was made a party defendant in the cause, and thereupon filed a motion in writing to abate the attachment.

At the same term of the court, counsel for the complainant, Mercereau, requested the grounds of the trustee's motion to abate, and in response the verbal statement was made, that the grounds relied upon were that "Girard had been adjudicated a bankrupt within four months after the attachment in this cause was executed, and that accordingly the said attachment and the levy thereof were null and void, under and by reason of the provisions of the bankruptcy act, and especially section 67-f thereof;" and the cause was then continued to the March term of the court.

On the first day of the March term, a motion of the complainant to require Jackson, as the bankrupt's trustee, to file a written statement of the grounds of his motion to abate the attachment was overruled, the court being of opinion that the matter required had already been stated by the trustee with sufficient particularity; thereupon, the hearing of the motion to abate was set for Tuesday, March 12.

On the day named, counsel for the trustee was informed by counsel for the complainant, of the grounds on which the motion to abate would be resisted, viz.: "That no evidence had been adduced by the trustee or any person showing or tending to show that said Girard was insolvent at the date of the levy and obtaining of the said attachment;" whereupon the hearing was continued to the next day, March 13, and on the last-named day was, by consent, continued to the 16th.

On March 16, the day fixed for the hearing, the trustee announced to the court, "that he was willing that the court should

take the case for decision upon the record as it then stood, and upon the authorities cited by both parties;" and then the case was heard, the court reserving it until the 18th for decision.

On the 18th of March, the court announced its judgment, overruling the motion to abate the attachment, on the ground that "there is no evidence or proof in this cause that said Girard, at the date of the obtaining of the attachment and the levy thereunder, as shown by the record, was insolvent."

Owing to the physical indisposition of the judge of the court, the decree prepared in accordance with his ruling was not entered on the 19th, and on the 20th of March, but before the entry of the decree in the order book of the court, the trustee, by counsel, appeared in court and asked leave to file what was styled "an amended and supplemental petition," wherein he prayed the abatement of the attachment on certain grounds stated, to-wit, the provisions of section 67-f of the bankruptcy act; but this petition was not allowed to be filed, the court being of opinion that the ground stated therein for abatement of the attachment was merely a written statement of the ground upon which had been based the former motion to abate, which written statement the trustee before the hearing declined to furnish; and the court being further of opinion that no sufficient grounds for a rehearing of the cause were alleged, proceeded to enter the decree prepared in accordance with its decision of the 18th of March, dismissing the original petition of the trustee filed in the cause, from which decree the cause is brought to this court on appeal.

Complaint is made that the foregoing facts as to what took place in the lower court are all set out in its decree adversely to appellant, but we are unable to appreciate the force of the contention that this method of stating the reasons for the court's decision is in violation of established rules of equity practice. The court might have, with the utmost propriety, set out its reasons for the decision rendered in a written opinion filed in the record and made a part of the decree carrying out the de-

cision, and there is no conceivable reason why the grounds for the court's ruling should not be recited in its decree.

The two assignments of error relied on are: *First,* the refusal of the court to abate the attachment under appellant's original petition filed in the cause; and, *second,* its refusal to allow the filing of the "amended and supplemental petition" of appellant tendered on the 20th day of March, 1907, the day previous to the entry of the decree appealed from.

Section 67-f of the bankruptcy act, so far as material here, is as follows: "That all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same."

The essential to the invalidity of any lien falling within the purview and control of the statute is, that (a) the lienee must be insolvent; (b) the insolvency must have existed at the time the lien attached—or, as applied to this case, Girard must have been insolvent on September 13, 1906, the date of the levy of the attachment.

Loveland on Bankruptcy (3rd ed.), sec. 192-c, discussing paragraph 67-f of the bankruptcy act, says: "It is essential, to bring a case within the prohibition, that it appears that the lien was obtained against a person who was insolvent at the time. If it does not so appear, the lien is valid. It is not sufficient that the levy caused insolvency." See also 1 Remington on Bankruptcy, sec. 1460.

In *Simpson* v. *Van Etten* (C. C.), 108 Fed. 199, the opinion of the court quotes with approval from Collier's work on Bankruptcy (3rd ed.), p. 434, as follows: "Not all liens obtained against one afterwards and within four months adjudged bankrupt are deemed null and void. It must appear that the person whose property is subject to the lien was insolvent at the time

of the creation of the lien. It is evident a lien might be obtained against one who is adjudged bankrupt within four months thereafter, but who was not insolvent at the time the lien was obtained. The act of bankruptcy and the insolvency might have occurred at some period subsequent to the creation of the lien. If so, the adjudication of bankruptcy would in no way determine whether or not the party was insolvent at the time the lien was created."

The burden of proof of such insolvency as is meant in paragraph 67-f is held in *Re Chappell,* (D. C.) 113 Fed. 545, to be upon the party alleging it as ground for abatement. The syllabus in that case is as follows: "Where the trustee of one who was adjudicated bankrupt on his voluntary petition files a petition alleging that certain partial payments to creditors, made within four months of filing the bankrupt's petition, were made while he was insolvent, and praying that such creditors be required to return such preferential payments before being permitted to receive dividends on their claims, and the creditors answered that the bankrupt was not insolvent at the time such payments were made, no presumption arises from the adjudication in bankruptcy that the bankrupt was insolvent for four months, or any period, before his petition was filed, and hence it is incumbent on the trustee to prove the insolvency."

In the case at bar appellant, neither in his petition filed in the lower court, nor in any statement of his grounds of motion to abate the attachment, relied upon Girard's insolvency within four months previous to his being adjudicated bankrupt, but relied solely on the ground that Girard had been adjudicated bankrupt within four months after the attachment in this case was executed, and that, accordingly, the attachment and the levy thereof were null and void, under and by reason of the provisions of the bankruptcy act, and especially paragraph 67-f thereof. So that, although counsel for appellant was called upon to state in writing the grounds of his motion to abate the attachment, and was advised that the grounds of resistance of

that motion were, that no evidence had been adduced by the appellant, or any person, showing or tending to show that Girard was insolvent at the date of the levy and the obtaining of the attachment sought to be abated, he declined to furnish any evidence as to insolvency and agreed that the court should take the case for decision upon the record as it then stood and the authorities' cited by counsel. Under these conditions, the judgment of the court overruling the motion to abate the attachment was plainly right.

It is contended, however, for appellant that the attachment constituted no lien, because incomplete and inchoate, for the reason that it did not become full, effectual and binding as a perfect lien until judgment of the court entered thereon—that such a lien is merely a provisional lien which could only be rendered perfect by judgment; and that bankruptcy having intervened between the time of the fixing of this provisional lien and the rendition of judgment thereon, no judgment could properly be rendered thereon.

Section 2971 of the Code of 1904 provides: "The plaintiff shall have a lien from the time of the levying of such attachment or serving a copy thereof as aforesaid    *    *    *    upon the personal property, choses in action, and other securities of such defendant in the hands of or owing by such garnishee on whom it is so served;    *    *    *    *    "

In support of appellant's contention, *Re Lesser* (D. C.), 108 Fed. 21, and *Re Johnson* (D. C.), 108 Fed. 375, are relied on. Aside from the explicit language of the section of the Code, *supra*, expressly giving a lien in favor of the attaching creditor from the time of the levying of the attachment, the weight of authority is expressly against appellant's contention. The cases relied on for appellant, above referred to, may have been justified, to some extent at least, by the peculiar language of the statutes reviewed.

In *Re Beaver Coal Co.* (C. C. A.), 113 Fed. 889, those cases were reviewed and disapproved, and there the circuit

court of appeals cited with approval *Re Blair* (D. C.), 108
Fed. 529, where the statute of Massachusetts, very similar to
our statute, was reviewed, and held that an attachment creates
a lien, the opinion saying: "Where, however, the lien is created
by the attachment, the judgment and levy create no new and
additional lien, but only enforce a lien already existing. Hence
in this case the levy and execution did not affect the property
attached with a lien avoided by the bankruptcy act, but only
enforced a lien already existing, which lien the bankruptcy act
expressly protected. With these views and those of the court
herein appealed from we agree."

In other words, that case repudiates the doctrine of "in-
choate" or "imperfect" liens with respect to liens by attach-
ment, and holds, in effect, that the lien of the attachment is
perfected by the levy thereof, and that a judgment or decree in
enforcement of this valid pre-existing lien is not the judgment
or decree denounced by the bankruptcy act, which was plainly
confined to judgments creating liens.

In *Metcalf Bros. & Co. v. Barker,* 187 U. S. 165, 47 L. Ed.
122, 23 Sup. Ct. 67, the Supreme Court of the United States
cites with approval *Re Beaver Coal Co., supra,* where had arisen
the very question made here as to the validity of an attachment
lien as a lien prior to the judgment in the attachment proceed-
ing, and in declaring the lien valid as a lien, in spite of the fact
that final judgment was necessary to its enforcement, the court
said: "The preponderance of authority is against the rule here-
tofore adopted in this case, and an examination of the bank-
ruptcy act convinces me that such a rule is contrary to the in-
tent of the law. The phrase, 'or other liens' in sec. 67-f, makes
it clear that the word 'judgments' is used solely with reference
to the liens created thereby. The lien, not the judgment, is the
thing proscribed; and that the lien of attachments is without
reference to the time when the judgment is rendered in the
attachment suit, is shown by the fact that the operation of the
provision in question as to attachments by its terms affects only

such attachments as are levied within four months of the filing of the petition in bankruptcy—a matter wholly immaterial if the judgment rendered within such period is annulled, and with it the lien of any attachment theretofore levied."

It would seem clear, therefore, from the foregoing authorities, that appellant's first assignment of error is without merit.

In considering the second assignment of error, we deem it unnecessary to repeat what has already been said with respect to the opportunities given appellant in the lower court to present his case fully, and showing that after full opportunity to make out his case, he not only declined to state any other ground for the abatement of the attachment than that the levy of the attachment was within four months prior to the adjudication of Girard as bankrupt, but offered no evidence in the cause that he was insolvent at the date of the levy. The refusal of the court to consider the amended and supplemental petition tendered by appellant was upon the ground that the petition merely stated in writing the ground upon which the trustee's motion to abate was based, which written statement the trustee had formerly refused to furnish, and because this matter had been heard and determined.

It is true that great liberality has been shown by the courts in allowing amendments to pleadings, both in equity and at law, but when a party has every opportunity afforded him to present his case for consideration and determination by the court, it never has been the practice, and such a practice should not be established, to allow a party to keep back part of his case until he ascertains what the decision of the court will be, and then come forward and obtain another hearing of matters which he might have brought forward when the case was first submitted but declined to do so.

In *Alsop* v. *Catlett*, 97 Va. 364, 34 S. E. 48, the court said that while amendments are largely in the discretion of the court, where the matters sought to be brought forward by an amended bill had been known to the complainant for months

before the case was decided or submitted and no reason was given why the amended bill was not tendered earlier, the trial court did not err in refusing to allow the amended bill to be filed.

In *Vashon* v. *Barrett,* 99 Va. 346, 38 S. E. 200, at a hearing of the cause in June, 1899, upon the bill, plea of statute of limitations and general replication thereto, the court sustained the plea and ordered the bill to be dismissed, but the order was not actually entered at that term of court, but was entered in December following as a *nunc pro tunc* order. On the day that the order was entered a stranger to the suit tendered his petition in the cause, alleging himself to be assignee for value of the complainant, and praying leave to be admitted as a party to the cause and to file an amended and supplemental bill. But the prayer was denied for several reasons stated, among which was, because the amended and supplemental bill made out a new case, and because it did not appear on its face or otherwise that the facts therein stated were discovered after the filing of the original bill, and because the court had decided at the last term to dismiss the original bill. In that case, after stating that the question of filing amended pleadings after the court had decided the cause was considered in the recent case of *Alsop* v. *Catlett, supra,* it is said: "In this case it does not appear from the amended bill, or otherwise, that the facts upon which the charge of fraud was based were discovered after the original bill was filed. No excuse whatever is given why the charge of fraud was not made before the case was decided. As this delay, unexplained, justified the court's refusal to allow the amended bill to be filed, it is unnecessary to consider the other grounds upon which it based its action."

In the case here, the "amended and supplemental" petition tendered by appellant gave no excuse whatever for the failure to present it before. It alleges no new matter, but is purely and simply a second motion to abate the attachment, based upon the identical grounds upon which was based the previous motion

to abate. It alleges no after-discovered evidence, no misconduct or surprise, and tenders no new proof.

In the case of *Vashon* v. *Barrett, supra,* the opinion further says: "Where a complainant has knowledge of the after-discovered matters before the case is heard, and delays offering an amended bill setting up such matters. until after the case is decided against him upon its merits, it cannot be said that the court abused its discretion in refusing to allow the amended bill to be filed."

The appellant here submitted his case to the court for decision upon the record as it then stood, and it was his failure to prove any facts entitling him to an abatement of the attachment, and not his failure to make a proper allegation of the grounds of his motion, that caused the decision to be necessarily against him upon the case made and submitted. He could not reasonably have expected another opportunity to introduce evidence after expressly declining to avail himself of his first opportunity to do so.

Upon the whole case, we are of opinion that the decree of the corporation court should be affirmed.

*Affirmed.*