2 B.R. 636 (1980)
In the Matter of Steven W. BRISBANE, Bankrupt.
Ethan Allen TURSHEN, Trustee in Bankruptcy, Plaintiff,
v.
BENNETT HEATING & AIR CONDITIONING, INC., f/d/b/a Bennett Air Conditioning, Inc., Runyon Pump Corporation, R.R. Runyon Company and Jones Masonry Company, Inc., Defendants.
Bankruptcy No. 78-1023-A.
United States Bankruptcy Court, E.D. Virginia, Alexandria Division.
February 11, 1980.
*637 Ethan Allen Turshen, Arlington, Va., Trustee in Bankruptcy.
Edmund L. Walton, Jr., McLean, Va., for bankrupt.

MEMORANDUM OPINION
MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.
The Complaint filed by the Trustee in this case seeks a determination as to whether *638 or not a certain lien obtained by judgment should be declared null and void under Section 67(a) of the Bankruptcy Act (11 U.S.C. § 107(a)).
The bankrupt, Steven W. Brisbane, filed a petition in bankruptcy on December 22, 1978. On July 31, 1979, the Court entered an order directing the Trustee to sell certain property, free and clear of liens, pursuant to a contract offer. The principal asset of this estate is a private residence located at 2730 Oak Valley Drive, Vienna, Virginia. The value of the property has been placed at $50,000.00.
The lien which the Trustee seeks to have voided was obtained by Jones Masonry Company, Inc., the defendant, in the Circuit Court of Fairfax County, Virginia, for the sum of $17,359.71 (Law 42776). The judgment was rendered on August 18, 1978, and duly docketed by the Clerk of the Circuit Court at 4:30 p.m. on August 24, 1978. (Trustee's Exhibit 2.)
In order to invalidate a lien under Section 67(a), it is incumbent upon the Trustee to establish that the lien: (1) was obtained by legal or equitable process; (2) either attached during the insolvency of the bankrupt or was sought and permitted in fraud of the provisions of the Bankruptcy Act; and (3) it was acquired within four months prior to the initiation of the bankruptcy proceeding.
1. It is clear that the rendition of a judgment is a "legal proceeding" within the meaning of Section 67(a)(1). See Wallace T. Bruce, Inc. v. Najarian, 249 Minn. 99, 81 N.W.2d 282 (1957). The judgment here was granted by default in the Circuit Court of Fairfax County on August 18, 1978. The record is quite clear that the judgment lien was obtained pursuant to legal or equitable process as required by Section 67(a).
2. In his Complaint, the Trustee alleged that on August 24, 1978, the date judgment was docketed and a lien obtained, that the bankrupt was insolvent. Section 1(19) of the Bankruptcy Act defines the term "insolvency" as follows:
"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with the intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."
With respect to the issue of insolvency, Section 67(a)(1) of the Bankruptcy Act provides that a lien obtained against the real property of the bankrupt within the prescribed statutory period "shall be deemed null and void (a) if at the time when such a lien was obtained such person was insolvent. . . ."
In Jackson v. Valley Tie & Lumber Co., 108 Va. 714, 62 S.E. 964 (Va.1908), the Virginia Supreme Court of Appeals observed that not every judicial lien obtained within the four months of filing of a bankruptcy petition can be deemed null and void. In order to render a lien null and void "[i]t must appear that the person whose property is subject to the lien was insolvent at the time of the creation of the lien." Id. 62 S.E. at 965. A later decision by the court, Newberry Shoe Co. v. Collier, 111 Va. 288, 68 S.E. 974 (Va.1910) established that "[a] discharge in bankruptcy does not necessarily affect a specific lien, but only releases the bankrupt from personal liability." Id. 68 S.E. at 975-76. The court in Dockery v. Flannery, 194 Va. 318, 73 S.E.2d 375 (Va. 1952), held that proof of insolvency at the time a bankrupt filed a petition in bankruptcy did not establish insolvency when the lien was obtained. Thus, even in an adjudication in bankruptcy no such presumption of insolvency relates back to when the lien was obtained. Id. 73 S.E. at 377.
The burden of proving that the bankrupt was insolvent when the lien was obtained is on the Trustee. Inland Sec. Co., Inc. v. Kirshner's Estate, 382 F.Supp. 338 (W.D.Mo.1974). It has been stated that the insolvency of a bankrupt may not always be susceptible of direct proof. Frequently, it must be determined by proof of other factors *639 from which the ultimate fact of insolvency may be either inferred or presumed. Haynes & Hubbard, Inc. v. Stewart, 387 F.2d 906 (5th Cir. 1967).
A statement of the bankrupt's assets and liabilities as of August 22, 1978, was set forth in Exhibits 1 and 3 filed herein by the Trustee. The defendant offered no objection to said exhibits' admission into evidence. The Trustee's Exhibit 3 places bankrupt's total liabilities (secured and unsecured claims) at $344,010.00. Assets were divided into two categories for purposes of computation. The first category was labelled "high" which indicated a sum of $241,475.00. The second category was labelled "low" which indicated a sum of $220,325.00. The difference in said sums appears in large part to be due to a higher value having been placed on property by the court-appointed appraiser which evidently did not yield the appraised amount at court-authorized foreclosure.
James E. Thompson, a certified public accountant, testified that the bankrupt was one of his first business clients. He performed various services for the bankrupt including the preparation of the latter's federal income tax returns. Thompson stated that he was familiar with the period of time in which the bankrupt became insolvent. Thompson's testimony also revealed that the bankrupt was involved in the commercial construction business and, when the bankrupt attempted to continue business in the area of residential construction in 1977, he incurred considerable financial losses. Thompson acknowledged, upon examination by the Court, that he based his knowledge as to the bankrupt's financial condition largely upon the petition filed in bankruptcy by Brisbane.
The bankrupt, Brisbane, upon examination, testified as to the accuracy of the figures as set forth in Trustee's Exhibit 3. The defendant presented no evidence for the Court's consideration.
Evidence presented by the Trustee sustains a finding of insolvency with respect to the bankrupt as of August 22, 1978.
3. In order for the Trustee to invalidate a lien under Section 67(a) of the Bankruptcy Act, he must establish that the judgment lien at issue was acquired within four months prior to the initiation of the bankruptcy proceeding. This point in time is determined when a lien attaches to real property of the bankrupt. It is immaterial when the proceeding to enforce the lien began or when the judgment enforcing the lien was entered. Jackson v. Valley Tie & Lumber Co., 108 Va. 714, 62 S.E. 964, 966 (Va.1908).
The principal issue before the Court is whether the judgment lien of defendant against the bankrupt comes within the four-month period prescribed in Section 67(a). As the bankrupt filed his petition in bankruptcy on December 22, 1978, all judgment liens obtained on or after August 22, 1978, would be within the four-month period and thus void. The judgment was rendered on August 18, 1978, and docketed on August 24, 1978. If the docketing date is accepted as the date on which the lien attaches, it is within the prescribed four-month period and is voidable. Liens acquired through judicial proceedings more than four months before the filing of the petition in bankruptcy are not within the reach of Section 67(a). Virginia law governs the resolution of this issue. Tucker v. Foster, 154 Va. 182, 152 S.E. 376, 379 (1930).
At common law, all judgments by a legal faction were supposed to be entered on the first day of the term of the court at which they were recovered. In Virginia, however, the doctrine has been abrogated.
Under Virginia law, Section 8.01-458 of the Virginia Code governs the time in which judgment liens on real estate may be enforced. This section provides, in pertinent part:
"Every judgment for money rendered in this Commonwealth by any state or federal court or by confession of judgment, as provided by law, shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment *640 lien docket of the clerk's office of the county or city where such land is situated. . . . "
A judgment may not be a lien on real property ex proprio vigore until it becomes such, as by docketing in a register's office. 4 Collier on Bankruptcy, § 67.08 (14th ed. 1978). See Matney v. Combs, 171 Va. 244, 198 S.E. 469, 472 (1938). The Virginia courts and legislature have long acknowledged the unique relationship between docketing of a judgment lien and the rendition of such judgment. In Hill v. Rixey, 67 Va. (26 Gratt.) 72, 74 (Va.1975), the court held that a judgment was not a lien on real estate as against subsequent purchasers for value and without notice, unless it was docketed in the mode and within the time prescribed by statute. See Ryan v. Kanawha Valley Bank, 71 F. 912 (4th Cir. 1895). The Hill court observed that creditors and trustees secured in a deed of trust are purchasers for value, and depending upon the circumstances of the particular case, may be purchasers for value without notice. The Supreme Court of Appeals of Virginia stated in Smith v. Litton, 167 Va. 263, 188 S.E. 714, 715 (1936) that a "[t]rustee in bankruptcy is governed by the same laws applicable to other trustees."
The enforcement of a judgment lien upon docketing is evidenced by a decision of the Virginia Supreme Court of Appeals, Matney v. Combs, 171 Va. 244, 198 S.E. 469 (1938) where the court observed:
"If it is established that the alleged judgment has been duly rendered and docketed, it is a lien both upon the real estate then held by the judgment debtor and also upon any real estate, which he may have conveyed in fraud of such judgment creditor, after the debt was contracted and before judgment was rendered."
Id. 198 S.E. at 472, citing Tucker v. Foster, 154 Va. 182, 152 S.E. 376 (Va.1930) where the Tucker court observed "[w]hen a judgment has been rendered and duly docketed, the effect is to impose a lien . . . upon the real estate held by the judgment debtor. . . ." Id. 152 S.E. at 379.
The statutory provision applicable in the case at bar, Virginia Code Section 8.01-458, has been amended several times since 1950 (Code 1950, § 386; 1954, c. 333; 1960, c. 466; 1964, c. 309; 1977, c. 617). Despite these frequent revisions since 1950, the ultimate statutory effect has been to maintain the peculiar relationship between the rendition of a judgment and the docketing of such judgment from which a lien obtains.
The only recent Virginia case to construe the enforcement of a judgment lien by docketing is Preston's Drive Inn Restaurant, Inc. v. Convery, 207 Va. 1013, 154 S.E.2d 160 (Va.1967). The Virginia Supreme Court of Appeals in Convery held that Virginia Code Section 8-386, which provided that "every judgment . . . shall be a lien on all of the real estate owned by the defendant at or after the date of judgment" was necessarily qualified by Virginia Code Section 8-390. Id. 154 S.E.2d at 164. This latter section provided that a judgment would not "be a lien on real estate as against a purchaser thereof for value without notice except from the time that it [wa]s duly docketed in the proper clerk's office." Id.
From the foregoing judicial decisions and legislative enactments, it is clear that in Virginia docketing is a necessary prerequisite to the validity of a judgment lien. See 11A Michie's Juris., Judgment and Decrees, § 52 (1978 Replacement).
Defendant argues that the judgment lien statute protects only purchasers without notice. He asserts that as the Trustee is in the position of a judgment creditor, and stands in a position no better than that of the bankrupt insofar as notice is concerned, the Trustee should not be permitted to rely on a statute which is intended to protect bona fide purchasers without notice. In support of this view, defendant refers to American Bank and Trust Co. v. Nat'l Bank of Suffolk, 170 Va. 169, 196 S.E. 693, 696 (Va.1938) where the court stated:
"The object and purpose of docketing judgments is to give notice to purchasers for value and without notice, of the real *641 estate of the judgment debtor. . . . It was not designed to protect judgment creditors. [citations omitted.]"
The position taken by defendant does not take into consideration the full scope and clear effect of the Trustee's powers granted to the latter by the Bankruptcy Act. The Trustee is empowered to recover for the estate in bankruptcy such property as would be beyond the power of the bankrupt to recover absent the benefits allowed under the Bankruptcy Act. A Trustee's title and rights under the Bankruptcy Act are not limited to those acquired by succession as argued by defendant. The title of the Trustee must be measured in part by his status as an ideal creditor without notice under Section 70(c) of the Bankruptcy Act. See Sequoia Machinery, Inc. v. Jarrett, 410 F.2d 1116 (9th Cir. 1969). See also cf. In re Smith, 348 F.Supp. 1290 (E.D.Va.1972).
In the instant matter, the judgment rendered on August 18, 1978, remained undocketed for a six-day period. The critical four-month period before the bankrupt filed his petition began after the rendition of the judgment but before the lien obtained therefrom was docketed. During this interim period of time, the property of the bankrupt passed to the Trustee on August 22, 1978 subject to liens good against the bankrupt at that time. Clearly, the Trustee, as an ideal creditor without notice, took possession of bankrupt's property subject to such liens. However, as the lien secured by defendant was not a valid enforceable lien until it had been duly docketed on August 24, 1978, it came within the prescribed four-month period enunciated in Section 67(a).[1] Said section states unequivocally that:
"Every lien against the property of the person obtained by . . . judgment . . . within four months before the filing of a petition [in bankruptcy] . . shall be deemed null and void (a) if at the time such lien was obtained such person was insolvent. . . . "
The Court finds that under Virginia law a judgment lien does not become enforceable until it is duly docketed. After careful examination of the Virginia Judgment Docketing statute as it relates to a judgment lien coming within the four-month period prior to the filing of a petition in bankruptcy, the Court must conclude that the judgment lien docketed on August 24, 1978, by the Clerk of the Circuit Court of Fairfax County, Virginia, is null and void.
NOTES
[1] The Court takes note of the view expressed in Gurnee v. Johnson's Ex'r., 77 Va. 712 (Va.1883) that as against third persons an undocketed judgment is not a lien.